# JARED BERNHARDT, Appellant/Defendant
## v.
# MARGARET BERNHARDT, Appellee/Plaintiff

S. Ct. Civ. No. 2007-132

Supreme Court of the Virgin Islands

April 17, 2009

YOLAN C. BROW, ESQ., Hunter Cole & Bennett, St. Croix, USVI, *Attorney for Appellant.*

H.A. CURT OTTO, ESQ., H.A. Curt Otto, P.C., St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 17, 2009)

PER CURIAM. Appellant, Jared Bernhardt (hereafter "Jared"), challenges the October 30, 2007 Superior Court order denying his motion for reconsideration of the permanent restraining order issued against him. For the reasons which follow, we will reverse the Superior Court's October 4, 2007 permanent restraining order, remand for a new hearing, and vacate the order denying the motion for reconsideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2007, Jared and his wife, Margaret Bernhardt (hereafter "Margaret"), became embroiled in an altercation after Margaret refused to cut Jared's hair because Jared was arguing with her and insulting her. After Margaret walked into the bedroom where Jared was waiting for her to cut his hair, Jared knocked over the bedside table which caused a lamp and several other items to fall to the floor and break. Because Margaret would not cut his hair, Jared then called to his thirteen year old daughter to cut his hair but she refused. Out of concern that the incident was getting out of control, Margaret called the police, and Jared waited with Margaret at their home until the police arrived sometime later. The police arrested Jared, and he spent the night in jail.

The following day, Margaret sought a temporary restraining order (hereafter "TRO"), alleging that Jared committed destruction of property, an act of domestic violence. A TRO was entered by the family division of the Superior Court on September 25, 2007, and a hearing on the permanent restraining order (hereafter "PRO") was set for October 2, 2007. At the hearing, Margaret appeared *pro se* but Jared appeared with retained counsel. However, Jared and his counsel were informed by the court that counsel was permitted to be present but could not participate in the proceedings. Thereafter, the family judge asked Margaret to recount the details of the September 24, 2007 incident. Jared was then asked to respond by similarly recounting the details of the incident. When Jared's counsel asked to address the court, she was informed that she was not allowed to do so as it would be unfair to Margaret, who was acting *pro se*. The judge did not inform the parties that they could cross-examine each other nor inquire into whether the parties had any other witnesses to present.

On October 4, 2007, the family court entered a PRO against Jared, naming assault as the specific act of domestic violence which Jared had committed. The PRO is to remain in effect until October 2, 2009. On October 17, 2007, Jared moved for reconsideration of the PRO, arguing the need to correct clear error or prevent manifest injustice. Specifically, Jared maintained that there was insufficient evidence that he had committed an act of domestic violence and that his due process rights were violated when the court barred his counsel from participating in the proceedings. The family court summarily denied Jared's motion for reconsideration by order entered on October 30, 2007, prior to the filing of Margaret's opposition to the motion for reconsideration on November 2, 2007.

On November 16, 2007, Jared filed a notice of appeal from the order denying his motion for reconsideration.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE ANN. tit. 4 § 32(a) (1997). Because the order denying Jared's motion for reconsideration was entered on October 30, 2007 and his notice of appeal was filed on November 16, 2007, the appeal of the order denying his motion for reconsideration is timely. *See* V.I. S. CT. R. 5(a)(1) (requiring notice of appeal in civil case to be filed within thirty days after date of entry of the order being appealed).

Before we can consider the merits of this appeal, it is necessary to clarify the particular family court order which will be addressed by this Court herein. Notably, although the notice of appeal states that Jared is appealing from the order denying his motion for reconsideration, the parties' briefs fail to raise any arguments relating to that order. Instead, the parties' arguments on appeal relate solely to the October 4, 2007 issuance of the underlying PRO.

■ Supreme Court Rule 4(c) states that a notice of appeal "shall designate the judgment, order, or part thereof appealed from and the reason(s) or issue(s) to be presented on appeal." Importantly, however, "[a]ppellate courts will only review a claimed error that . . . is supported by argument and citations to legal authority." *Vern Sims Ford, Inc. v.*

*Hagel*, 42 Wn. App. 675, 713 P.2d 736, 742 (Wash. Ct. App. 1986). Thus, issues raised in a notice of appeal which are not argued in the appellant's brief are waived. *See, e.g., Canady v. Crestar Mort. Corp.*, 109 F.3d 969, 973-74 (4th Cir. 1997) (holding that issues raised in notice of appeal but not briefed on appeal are deemed waived); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal."); *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 526 (3d Cir. 2003). Accordingly, Jared's appeal of the order denying his motion for reconsideration is deemed waived, and this Court will not address whether the court committed reversible error in denying the motion for reconsideration.[1]

Additionally, since the parties' arguments in their respective briefs address the propriety of the PRO entered against Jared, it is necessary to determine whether an appeal from that underlying order is properly before the court. Supreme Court Rule 5(a)(4) provides that, in order to toll the time to appeal from the underlying order, a party making a motion for reconsideration must file that motion within ten days after entry of the order to be reconsidered. Because the PRO was entered on October 4, 2007 and the motion for reconsideration was filed on October 17, 2007, Jared properly tolled the time to appeal from the PRO.[2]

██ However, our inquiry does not end there. It is significant that Jared's notice of appeal states only that he appeals from the denial of his motion for reconsideration, because

> [w]hen an appeal is taken from a specified judgment only or from a part of a specified judgment, [a] court of appeals acquires thereby no jurisdiction to review other judgments or portions thereof not so specified or otherwise fairly to be inferred from the notice as intended to be presented for review on the appeal.

*Lusardi v. Xerox Corp.*, 975 F.2d 964, 972 (3d Cir. 1992). This Court has jurisdiction over the unspecified PRO if "there is a connection between the

---

[1]   Nevertheless, in light of our conclusion herein with respect to the propriety of the underlying PRO, the order denying Jared's motion for reconsideration will thereby be vacated.

[2]   Pursuant to Supreme Court Rule 16(b), weekends and legal holidays are excluded from the computation of time when a proscribed deadline is less than eleven days.

specified and unspecified order, the intention to appeal the unspecified order is apparent and the opposing party is not prejudiced and has a full opportunity to brief the issues." *Williams v. Guzzardi*, 875 F.2d 46, 49 (3d Cir. 1989). In this case, there is a clear connection between the motion for reconsideration and the underlying PRO, because the motion for reconsideration sought reversal of the PRO on the grounds that the PRO hearing violated Jared's due process rights and that there was insufficient evidence to support the entry of the PRO. Second, it is apparent that Jared intended to appeal from the PRO because the arguments in his brief relate solely to the entry of that order. Lastly, although Margaret does not assert any prejudice, it is evident that none exists as her brief fully addresses the merits of the PRO. Hence, Jared's failure to specifically state in the notice of appeal that he appeals from the PRO is harmless error. *See Matute v. Procoast Navigation, Ltd.*, 928 F.2d 627, 630 (3d Cir. 1991) ("[I]n the absence of a showing of prejudice by [Appellee], it appears that [Appellant's] mistake in failing to state specifically that he was appealing from the underlying [order] should be viewed as harmless error and not a jurisdictional bar to his appeal. Indeed, [Appellant] did *mention* the [underlying order] in his notice of appeal; the intent to appeal from that Order, thus, can be inferred fairly from the notice." (emphasis in original)).

On review of the Superior Court's application of law, we apply a plenary standard of review. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Findings of fact, however, are reviewed only for clear error. *Id.*

## B. Jared's Due Process Rights Were Violated When the Trial Court Prevented Retained Counsel from Participating in the PRO Hearing .

As one ground for appeal,[3] Jared argues that the family court violated his due process rights[4] when it prevented his retained counsel from actively representing him during the PRO hearing. Prior to

---

[3]  As a second ground for appeal, Jared argues that there was insufficient evidence from which the court could find that he committed an act of domestic violence under 16 V.I.C. § 91(b). However, our decision with respect to Jared's due process argument makes it unnecessary for this Court to address Jared's insufficient evidence argument.

[4]  The Fourteenth Amendment is applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act. *See* The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *re-*

commencement of the hearing, the court instructed Jared and his counsel that counsel would be permitted to be present during the hearing but would not be allowed to address the court on his behalf.[5] The family judge then began the hearing by calling Margaret to the stand and asking her to recount the events that lead her to seek a TRO against Jared. Jared was subsequently asked to come forward and respond.[6] While Jared was still on the stand, the court explained its reasoning for not allowing counsel to participate in the hearing:

> MS. BROW: Your honor, I am aware that my ability to speak in this proceedings is somewhat limited, but am I allowed to address the Court at all?
>
> THE COURT: No, not at all. The Court will only allow [it] if both sides were represented, but (*sic*) it poses an unfair advantage to the unrepresented side.

(*Id.* at 22.)

In support of his due process argument, Jared contends that parties in domestic violence hearings are entitled to be represented by retained counsel and to cross-examine witnesses because the issuance of a PRO severely impacts the lives of the accused party. Margaret counters that, because domestic violence actions are not criminal proceedings, there is no Sixth Amendment right to counsel, nor any Fourteenth Amendment right to be advised of the right to counsel. Margaret also maintains that "[i]t is standard practice in [this judge's] domestic violence cases that the

---

*printed in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.I. CODE ANN. tit. 1).

[5]     Although this discussion is not on the record, it is apparent that such a discussion occurred as the appearances page of the transcript indicates that both Margaret and Jared appeared *pro se* and that Yolan C. Brow, Esquire was "also present." (Hr'g Tr. 2, Oct. 2, 2007.)

[6]     The following colloquy took place:

Q: You have heard the testimony of Mrs. Bernhardt, how do you wish to respond?
A: How would you like me to respond? Would you like me to recant what I saw happen on that Monday afternoon?
Q: Yes.
A: Is that what you like?
Q: Yes.

(Hr'g Tr. 12.)

parties speak, but that counsel is allowed to provide advice from the seat next to the party represented." (Appellee's Br. at 6.)

### 1. There Is a Right to Be Represented by Retained Counsel in a Domestic Violence Hearing

Jared's due process argument essentially centers on whether there is a right to be represented by retained counsel in a domestic violence hearing. Importantly, Superior Court Rule 84, a rule governing procedure in the family division, provides that "[i]n criminal and quasi-criminal causes, the judge shall inform the defendant of the complaint against him and of his right to retain counsel and to have a reasonable time in which to prepare his defense." In light of this rule, this Court must determine whether domestic violence permanent protection order proceedings are criminal or quasi-criminal.

The domestic violence chapter of the Virgin Islands Code clearly provides that a party may be arrested and charged with a crime that constitutes domestic violence. *See* 16 V.I.C. § 99. The statute requires that "[i]n criminal actions for domestic violence, the prosecuting attorney shall charge in the information that the alleged act is an act of domestic violence." *See* 16 V.I.C. § 99(f). In this case, Jared was arrested and placed in jail overnight following his altercation with Margaret. He was not, however, officially charged in an information or a complaint with a criminal charge of domestic violence. Thus, the proceedings at issue here are not wholly criminal.

Nevertheless, the rule requiring the judge to inform a defendant of the right to retain counsel is also invoked when a family court proceeding is quasi-criminal in nature. *See* SUPER. CT. R. 84. Numerous courts, which have addressed the characteristics of domestic violence restraining order proceedings, have found them to be quasi-criminal in nature. *See, e.g., Kelm v. Hyatt*, 44 F.3d 415, 423 (6th Cir. 1995) ("Furthermore, a civil protection order [to protect against domestic violence] is quasi-criminal in nature."); *United States ex rel. Verdone v. Wisconsin*, 1995 U.S. App. LEXIS 4700, **12-13 (7th Cir. 1995) (unpublished) (quoting Sixth Circuit's statement in *Kelm* that such orders are quasi-criminal); *In re Nelson*, 335 B.R. 740, 750 (Bankr. D. Kan. 2004) ("[Protection from Abuse Act] cases, like the restraining orders entered by divorce courts, have quasi-criminal characteristics."); *Dunham v. Roer*, 708 N.W.2d 552, 568 (Minn. Ct. App. 2006) (" 'Quasi-criminal' statutes are '[l]aws that

provide for punishment but are civil rather than criminal in form[.], . . . Here, although the harassment proceeding is civil in nature, criminal sanctions may result if the court order is violated. Therefore, we conclude that the harassment statute is 'quasi-criminal' . . . ." (alterations in original) (internal citation omitted)); *Striedel v. Striedel*, 15 S.W.3d 163, 167 n. 2 (Tex. App. 2000) ("Examining the nature of a [domestic violence] protective order, the method by which it is prosecuted, the sanctioned deprivations of liberty and property which are possible pursuant to such an order, and the possibility of incarceration, we believe the proceeding is quasi-criminal in its nature."); *Leggio v. Leggio*, 190 Misc. 2d 571, 737 N.Y.S.2d 259, 261 n. 2 (N.Y. Fam. Ct. 2002) (stating that family court protective orders are quasi-criminal, despite the legislature's "civil" label, because violation of the order results in incarceration); *but see Delaware v. Manista*, 651 A.2d 781, 785 (Del. Fam. Ct. 1994) ("[I]t is the determination of this Court that a proceeding under the Protection from Abuse Act in which petitioner is seeking an order of protection from abuse is a civil proceeding.").

In the Virgin Islands, a PRO based on an act of domestic violence may result, *inter alia*, in the temporary loss of custody of one's children, the loss of possession of one's residence, and the restriction of one's movement. *See* 16 V.I.C. § 97(b). Additionally, a defendant subject to a domestic violence restraining order loses the right to possess a firearm. *See* 18 U.S.C. § 922(g)(8). Moreover, beyond constituting contempt, violation of the PRO automatically constitutes a crime of domestic violence carrying a punishment of up to 180 days incarceration and a fine of up to $5,000. *See* 16 V.I.C. § 97(c), (e). In this case, the PRO prohibited Jared from having any contact with Margaret (except as necessary to arrange visitation with their children), granted Margaret possession of their residence and thereby Jared's home office where their joint business was located, and granted temporary custody of the children to Margaret. The PRO also explicitly stated that, if he violated the order, Jared would be guilty of a misdemeanor and fined and imprisoned according to the statute.

Because of the deprivations suffered by Jared and the possibility of imprisonment should he violate the PRO, this Court holds, consistent with the above jurisdictions, that a domestic violence PRO hearing is quasi-

criminal in nature.[7] Accordingly, a defendant in a domestic violence proceeding where a permanent protective order is sought has a right, pursuant to Superior Court Rule 84, to retained counsel and to be informed of that right by the court.

### 2. Due Process is Violated When Retained Counsel Is Permitted to Be Present but Is Prevented from Participating in the Proceedings

Having concluded that a domestic violence hearing on a PRO is a quasi-criminal proceeding, we must determine whether the family judge erred in preventing Jared's retained counsel from advocating on his behalf. Margaret argues that Jared's counsel was excluded only from addressing the court but was not excluded from the hearing altogether. Additionally, she contends that "there is no evidence that Counsel was not allowed to address Mr. Bernhard, directly, off the record." (Appellee's Br. at 6.)

■ Superior Court Rule 84 specifically required the family judge to advise Jared of his right to retain counsel in the quasi-criminal domestic violence hearing. As the New York Appellate Division aptly held, a "provision requiring the court to advise a respondent of his right to counsel implies that the court will give respondent *and his retained counsel* reasonable opportunity to appear and present respondent's evidence and arguments." *Lewis v. Crosson* 53 A.D.2d 1029, 1029, 386 N.Y.S.2d 154 (N.Y. App. Div. 1976) (emphasis added). Additionally, "[g]eneral principles of due process dictate that a litigant has a right to be heard and that the court must protect that right" and that "[t]he opportunity to be heard and present evidence must generally amount to more than a cursory opportunity to cross-examine the other party's witnesses." *Striedel*, 15 S.W.3d at 166.

---

[7]    We note that *Goodwin v. Goodwin*, 23 V.I. 80 (V.I. Super. 1987), the sole case upon which Margaret relies, is not impacted by our holding. In *Goodwin*, the defendant, against whom a TRO was issued, argued that entry of the TRO violated his Sixth Amendment right to counsel. The trial court held that there was no right to counsel in domestic violence proceedings where the defendant has not been charged with a crime of domestic violence under title 16, section 99 of the Virgin Islands Code. Nevertheless, our holding herein is not in conflict with the holding in *Goodwin* because the domestic violence proceeding at issue in this case is a hearing on a PRO, issued pursuant to title 16, section 97, rather than a TRO, issued pursuant to title 16, section 98.

█ Most importantly, when addressing the meaning of due process as it relates to the assistance of counsel, the United States Supreme Court has held that:

> It never has been doubted by this court, or any other so far as we know, that notice and hearing are preliminary steps essential to the passing of an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process of law. What, then, does a hearing include? Historically and in practice, in our own country at least, *it has always included the right to the aid of counsel when desired* and provided by the party asserting the right. *The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. . . . If in any case, civil [or] criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.*

*Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S. Ct. 55, 64, 77 L. Ed. 158 (1932) (emphases added).

█ Here, the family judge allowed counsel to remain in the courtroom for the hearing but forbade counsel from presenting any evidence or arguments on Jared's behalf solely because Margaret was not also represented by counsel.[8] As a consequence, there was no meaningful

---

[8]  We are compelled to address the family judge's ruling that Jared's counsel could not participate during the hearing because it would be unfair to Margaret as a *pro se* party. The Supreme Court of Appeals of West Virginia has stated that "[w]hen a litigant chooses to represent himself, it is the duty of the trial court to insure fairness, allowing reasonable accommodations for the pro se litigant *so long as no harm is done an adverse party.*" *Bego v. Bego*, 177 W. Va. 74, 350 S.E.2d 701, 703 (1986) (emphasis added). Similarly, the Supreme Court of Connecticut has held that it "will endeavor to see that [a *pro se*] litigant shall have the opportunity to have his case fully and fairly heard *so far as such latitude is consistent with the just rights of any adverse party.*" *Conservation Comm'n of Simsbury v. Price*, 193 Conn. 414, 479 A.2d 187, 192 n. 4 (1984) (emphasis added). *See also Patterson v. Wayne County Boot Camp*, No. M2007-00358-COA-R3-CV, 2007 Tenn. App. LEXIS 693, *4 (Tenn. Ct. App. Nov. 15, 2007) ("[T]he court should not prejudice the rights of other parties in order to be 'fair' to parties representing themselves."). As these cases make clear, a court may not deprive a party represented by counsel of the right to have his case fully heard merely because the opposing party is acting *pro se*.

opportunity to cross-examine Margaret or to present evidence and arguments related to the elements that Margaret was required to prove before a PRO could issue. *See* 16 V.I.C. § 97(a). Thus, Jared's defense to the domestic violence allegation was reduced to merely recounting his version of the events leading to the domestic violence complaint. We note that a deprivation of the opportunity to be heard by counsel has particularly egregious results where, as here, the entry of the PRO deprives a defendant of access to his property and children, as well as to his livelihood for a period of up to two years. Accordingly, we hold that the family judge denied Jared his due process rights when it barred his retained counsel from participating in the PRO proceeding.[9]

## III. CONCLUSION

■ Because we conclude that a domestic violence PRO proceeding is quasi-criminal in nature, we hold that a defendant in such a proceeding has a right, pursuant to Superior Court Rule 84, to retained counsel and to be informed of that right by the family court.[10] Moreover, we conclude that preventing retained counsel from presenting evidence and arguments on behalf of a party during such a proceeding violates due process. Accordingly, we reverse the PRO and remand for a new hearing. As a consequence, the order denying the motion for reconsideration of the PRO is vacated.

---

[9] Our holding herein that retained counsel must be permitted to actively participate in domestic violence PRO proceedings is not meant to affect the general validity of Superior Court Rule 102. That provision provides that the family court shall hear and determine adult causes in a summary manner. SUPER. CT. R. 102(a). A summary proceeding is "[a] nonjury proceeding that settles a controversy or disposes of a case in a relatively prompt and simple manner." BLACK'S LAW DICTIONARY 1242 (8th ed. 2004). "[S]ummary proceedings are inappropriate [only] when parties would be deprived of a full and fair opportunity to present their claims and defenses." *Gov't v. Lansdale*, Civ. Nos. 2001/0157, 1192/0079, 2009 U.S. Dist. LEXIS 15149, *6 (D.V.I. Feb. 18, 2009). Thus, the family court may conduct relevant proceedings in a summary manner as long as parties to a domestic relations PRO proceeding are afforded adequate due process protections.

We also note that in other summary proceedings provided for by local law the presence and participation of retained counsel does not necessarily render such proceedings less summary. *See, e.g.*, 28 V.I.C. § 782 (action for forcible entry and detainer); 19 V.I.C. § 2039 (removal or abatement of public nuisances).

[10] Our decision is expressly limited to the right to retained counsel in a quasi-criminal domestic violence PRO proceeding, as provided for in Superior Court Rule 84.