Opinion issued February 25, 2021



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00280-CV

_____

**RONALD JOSEPH, Appellant**

**V.**

**BRITINI JEAVON JACK, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-91034**

---

# O P I N I O N

Appellant, Ronald Joseph, appeals the trial court's order denying his bill of review and traditional motion for summary judgment. In a prior, separate proceeding, appellee Britini Jeavon Jack obtained a default protective order against

Joseph after he failed to appear for two hearings. Joseph filed a bill of review requesting that the trial court vacate the default protective order, reopen those proceedings, and grant a new trial. He also filed a traditional motion for summary judgment in the bill-of-review proceeding. After a hearing and a request for supplemental briefing, the trial court entered judgment denying both Joseph's bill of review and summary judgment motion.

On appeal, Joseph contends that: (1) the trial court erred in denying his bill of review because the sheriff's deputy who served him with process in the prior protective order proceeding did not sign the return of service or did not sign it in his official capacity, which rendered the protective order void; and (2) the trial court violated his due process right to be heard on his bill of review by denying him an evidentiary hearing and trial. We affirm.

## Background

In February 2018, Jack, represented by the Harris County District Attorney's Office, filed an application for a protective order and temporary protective order against Joseph in Harris County District Court alleging family violence. *See* TEX. FAM. CODE ANN. §§ 81.001 ("A court shall render a protective order . . . if the court finds that family violence has occurred and is likely to occur in the future."), 83.001(a) (authorizing temporary ex parte protective order if court finds "that there is a clear and present danger of family violence . . . without further notice to the

2

individual alleged to have committed family violence and without a hearing"). The trial court issued a temporary ex parte protective order and ordered Joseph to appear on March 7, 2018, and show cause that a protective order should not issue against him.

The return of service, pictured below, was attached to the citation and is at issue in this case.[1] The notary signed and dated the return.

Attached to the return is an invoice from Calcasieu Parish Sheriff's Office, a service of process information sheet, and an envelope addressed to the Harris County District Attorney's Office. The invoice, which is on Calcasieu Parish Sheriff's Office letterhead, includes fees for the notary and citation with the notations,

---

[1]     The Court has redacted Joseph's street address to protect his privacy.

"Personal to Ronald Joseph on 02/26/2018 by 75 DuBrock" and "Britini Jeavon Jack vs Ronald Joseph[.]" The invoice payee is Tony Mancuso, Calcasieu Parish Sheriff's Office, with an address in Lake Charles, Louisiana. The information sheet includes Joseph's identifying information, address, and employment information. The envelope addressed to the Harris County District Attorney's Office bears the return address for the Calcasieu Parish Sheriff's Office.

On March 7, 2018, the trial court continued the hearing scheduled for that day until March 21 and extended the temporary protective order for twenty days because the return of service had not been on file with the court for ten days.[2] *See* TEX. R. CIV. P. 107(h) (prohibiting default judgment when proof of service had not been on file with clerk of court for ten days before entry of judgment). Joseph did not appear at the hearing on March 21, and the trial court signed a default protective order. The order stated that Joseph was "duly and properly cited" and "duly and properly served with the application and notice of the hearing" but "did not appear and wholly made default." The order found that "family violence has occurred and that family violence is likely to occur again in the future, and that Respondent, RONALD JOSEPH, has committed family violence." The order prohibited Joseph from taking

---

[2] The record does not indicate whether the court held a hearing on March 7 or merely continued it, but Joseph states in his brief that "[he] did not appear at the March 7 hearing." We assume without deciding that the trial court held a hearing on March 7.

certain actions regarding Jack and her minor children, and it assessed him costs and attorney's fees to be paid to Harris County.

In December 2018, Joseph filed a petition for bill of review challenging the default protective order. The sole ground raised in his petition was that DuBrock, the serving officer, did not sign the return of service, thereby making the protective order void due to improper service of citation. Joseph's petition detailed the facts and legal authority that he relied on to challenge the default protective order. Joseph attached to his petition the records from the prior proceeding that we discussed above: (1) the temporary protective order and show cause order; (2) the citation and return of service, which included the Calcasieu Parish Sheriff's Office invoice for service and notary fees, information sheet, and return envelope; (3) the March 7 order extending the temporary protective order; and (4) the default protective order. Jack, still represented by the Harris County District Attorney's Office, filed an answer with a general denial and a request for costs and attorney's fees.

In January 2019, Joseph filed a traditional motion for summary judgment on the ground that DuBrock did not sign the return of service, rendering the default protective order void. Joseph attached the same documents to his motion that he had attached to his petition.

The trial court held a brief hearing. Initially, the court stated that it had reviewed Joseph's petition and motion and was inclined to grant the bill of review.

5

However, the State argued that a law enforcement officer "sign[ed] his name Mike DuBrock of Lake Charles, Calcasieu Parish, Louisiana" "above the line where it says 'Deputy,'" which complied with the requirement in Texas Rule of Civil Procedure 107 that an officer "must sign the return." *See* TEX. R. CIV. P. 107(e). Joseph countered that the officer only "wrote his name."

After reading excerpts of Rule 107 into the record, the trial court stated that it believed the dispute was whether the officer's handwritten, printed name on the return constituted a signature, and it disagreed with Joseph that the officer did not sign the return: "To me it looks like he signed it." The trial court stated that it was "going to reverse [itself]" from its initial inclination to grant Joseph's bill of review because DuBrock's signature appeared to be valid and, therefore, the return complied with Rule 107. Before the trial court ruled, however, Joseph argued that he had established that DuBrock's signature was invalid, but he requested a hearing to provide evidence. The trial court disagreed with Joseph, but the court ordered him to file a supplemental brief addressing the issue so that the court could "look at the case law . . . and see exactly what [Joseph's] argument is as to why this doesn't qualify as a signature." The trial court told Joseph, "And if your brief convinces me that you need a hearing on this matter, then I will set it for a hearing."

Joseph filed a supplemental brief generally arguing that "[t]he return of service . . . is not signed as that term is understood under Texas law," that DuBrock

6

did not identify his principle, that DuBrock did not intend his printed name to be a signature because he also printed "CPSO (15 miles)" next to his name, and that the notary did not fill in DuBrock's name in the notary certification. Joseph did not attach evidence to his supplemental brief, and he did not make a further request for an evidentiary hearing.

On March 28, 2019, the trial court entered an order denying Joseph's bill of review and motion for summary judgment. This timely appeal followed.

## Bill of Review

In his first issue, which includes two subparts, Joseph argues that the trial court erred in denying his bill of review because he was not properly served with process in the protective order proceeding. Joseph argues that service was improper because DuBrock did not sign the return of service or he did not sign the return in his official capacity.

### A.    Standard of Review

We review a trial court's ruling on a bill of review for abuse of discretion, indulging every presumption in favor of the court's ruling. *Moore v. Brown*, 408 S.W.3d 423, 432 (Tex. App.—Austin 2013, pet. denied); *Xiaodong Li v. DDX Grp. Inv., LLC*, 404 S.W.3d 58, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The trial court abuses its discretion only if it acted in an unreasonable or arbitrary manner

or without reference to any guiding rules and principles. *Xiaodong Li*, 404 S.W.3d at 62.

**B.    Governing Law**

A bill of review is "a direct attack on a judgment that is no longer appealable or subject to a motion for new trial." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015) (quoting *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010)); *see* TEX. R. CIV. P. 329b(f) ("On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law . . . ."). To obtain an equitable bill of review, the petitioner must generally plead and prove: (1) a meritorious claim or defense to the judgment; (2) which the petitioner was prevented from making by official mistake or by the opposing party's fraud, accident, or wrongful act; (3) unmixed with any fault or negligence on the petitioner's own part. *Valdez*, 465 S.W.3d at 226 (citations omitted).

When, however, a petitioner's sole claim is that service of process was improper, he is relieved of showing the first two elements and need only prove the third element: that judgment was rendered unmixed with the petitioner's own fault or negligence. *Caldwell v. Barnes*, 154 S.W.3d 93, 96–97 (Tex. 2004) (per curiam); *W. Columbia Nat'l Bank v. Griffith*, 902 S.W.2d 201, 205 (Tex. App.—Houston [1st Dist.] 1995, writ denied). The petitioner conclusively establishes the third element

8

by proving that service of process was improper. *Caldwell*, 154 S.W.3d at 97; *Griffith*, 902 S.W.2d at 205.

The Texas Supreme Court has set forth the trial procedure and burdens of persuasion by each party in a bill of review action, which is slightly modified when the petitioner's sole claim is improper service of process. *Baker v. Goldsmith,* 582 S.W.2d 404, 408–09 (Tex. 1979); *see Caldwell*, 154 S.W.3d at 97–98 ("slightly" modifying *Baker* procedure "when a plaintiff seeks a bill of review based solely on a claim of non-service"). The petition must allege "factually and with particularity" that service was improper. *Baker*, 582 S.W.2d at 408. In addition, the petitioner bears the burden to prove improper service. *Id.* at 409; *Caldwell*, 154 S.W.3d at 97–98. The petitioner satisfies his prima facie burden by showing that he was improperly served and "that he will be entitled to judgment on retrial if no evidence to the contrary is offered," which "is a question of law for the court." *Baker*, 582 S.W.2d at 409 (citations omitted).

The record in a bill-of-review proceeding is not limited to the prior proceedings and the parties may present evidence to develop the record and support their positions. *See Gold v. Gold*, 145 S.W.3d 212, 214 (Tex. 2004), *abrogated on other grounds by Ex parte E.H.*, 602 S.W.3d 486, 496–97 (Tex. 2020). Prima facie proof may be documentary evidence, discovery answers, and affidavits on file, "along with such other evidence that the trial court may receive in its discretion."

9

*Baker*, 582 S.W.2d at 408. The respondent may also present evidence, "but factual questions arising out of factual disputes are resolved in favor of the [petitioner] for the purposes of this pretrial, legal determination." *Id.* "This may be an onerous burden, but it is a major distinguishing factor between a bill of review and a motion for new trial." *Id.* at 409 (stating that "distinction rests on our policy favoring finality of judgments"). "This preliminary showing is essential in order to assure the court that valuable judicial resources will not be wasted by conducting a spurious 'full-blown' examination of the merits." *Id.* at 408.

If the court determines that a prima facie case has not been made, "the proceeding terminates and the trial court shall dismiss the case." *Id.* at 409; *see also Soefje v. Soefje*, 270 S.W.3d 617, 625 (Tex. App.—San Antonio 2008, no pet.) (stating that judgment may be rendered after pretrial hearing if record "unmistakably demonstrates that there were only legal issues to decide" and parties had notice); *Walden v. Affiliated Comput. Sys., Inc.*, 97 S.W.3d 303, 323 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that Texas Rule of Civil Procedure 166, allowing trial courts to hold pre-trial conferences, does not prevent trial court from receiving evidence and expert testimony to "determin[e] whether any fact issue remained for submission to a jury" and for "limited purpose of identifying and ruling on legal issues, provided the court's rulings do not resolve factual disputes that properly fall within the province of the jury"). However, proof of non-service can

10

establish a prima facie case, and such proof would entitle a petitioner to a trial if the parties dispute material facts. *Caldwell*, 154 S.W.3d at 97 ("Because proof of non-service conclusively negates a plaintiff's fault or negligence, then, the question of service is properly resolved at trial and not by the trial court in a pretrial proceeding if the material facts are disputed."); *Baker*, 582 S.W.2d at 409.

When a petitioner challenges a no-answer default judgment in a bill of review, the record must show strict compliance with the manner and mode of service, or otherwise the service is invalid and the default judgment is void. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam) ("For well over a century, this court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack.") (citing *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990), *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 886 (Tex. 1985), *McKanna v. Edgar*, 388 S.W.2d 927, 929 (Tex. 1965), *Flynt v. Kingsville*, 510 S.W.2d 934, 934 (Tex. 1935), *Sloan v. Batte*, 46 Tex. 215, 216 (1876), and *Roberts v. Stockslager*, 4 Tex. 307, 309 (1849)); *Griffith*, 902 S.W.2d at 205–06. "Although the law makes no presumptions in favor of valid issuance, service, and return of citation in an attack on a default judgment, an officer's return is prima facie evidence of the facts recited therein and cannot be rebutted by the uncorroborated proof of the

11

moving party." *Griffith*, 902 S.W.2d at 206 (citing *Primate Constr.*, 884 S.W.2d at 152–53).

## C.    Analysis

### 1.    Signature of Officer Executing Return of Service

Joseph does not deny that he was served with process in this case. Rather, in the first part of his first issue, he argues that service of process was ineffective because the serving officer did not sign the return of service as required by Rule 107. Joseph acknowledges that the serving officer, DuBrock, handwrote his name on a preprinted line above "Deputy" but argues that DuBrock's printed name is not a valid signature under the rule because he did not sign above the line preprinted with "Affiant" and thus there is no indication that DuBrock intended to sign his name. Jack responds that this Court has already decided that a printed name is sufficient under Rule 107.

Joseph did not timely file a direct appeal or restricted appeal, and therefore he could only challenge the default protective order issued in the prior proceeding by bill of review. *See Valdez*, 465 S.W.3d at 220–21; TEX. R. APP. P. 26.1(a) (providing deadline to file notice of direct appeal), (d) (providing deadline to file notice of restricted appeal). Neither party disputes that an invalid signature on a return of service constitutes a claim of improper service relieving Joseph of proving the first two elements generally required for a bill of review to issue. *See Primate Constr.*,

884 S.W.2d at 152 (stating that strict compliance with Rule 107 is required to support default judgment); *Griffith*, 902 S.W.2d at 205–06.

Joseph's petition for a bill of review detailed the facts and legal authority that he relied on and attached evidence in support. Joseph had the burden to present prima facie proof that service was improper before he was entitled to an evidentiary hearing or trial on his bill of review. *See Baker*, 582 S.W.2d at 408 (stating prima facie proof "is essential in order to assure the court that valuable judicial resources will not be wasted by conducting a spurious 'full-blown' examination of the merits"); *Caldwell*, 154 S.W.3d at 96–97.

Rule 107 requires the officer serving or attempting to serve a citation to "sign the return." TEX. R. CIV. P. 107(e); *see* TEX. R. CIV. P. 103 (authorizing "any sheriff or constable" to serve process), 108 (providing that service of process outside of state or to nonresident "shall be completed in accordance with Rule 107"). Neither Rule 107 nor any of the other rules define "sign" or prescribe any particular format for the serving officer's signature on the return. *See* TEX. R. CIV. P. 107. This Court has previously held that when "the name of the constable [that served process] is printed rather than signed personally," such a "printed signature of the constable was sufficient for the official signature required by rule 107." *Garza v. Dal-Tile Corp.*, No. 01-93-01169-CV, 1994 WL 149079, at *1 (Tex. App.—Houston [1st Dist.] Apr. 21, 1994, no writ) (not designated for publication) (citing *Houston Pipe Coating Co.*

13

*v. Houston Freightways, Inc.*, 679 S.W.2d 42, 45 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd)). The Fourteenth Court of Appeals similarly has held that the "deputy who made the return us[ing] a rubberstamp as his signature" strictly complied with Rule 107. *Houston Pipe Coating*, 679 S.W.2d at 45 (citing *Cortimiglia v. Miller*, 326 S.W.2d 278, 284 (Tex. App.—Houston 1959, no writ), and *Travieso v. Travieso*, 649 S.W.2d 818, 820 (Tex. App.—San Antonio 1983, no writ)).

Joseph attached several documents to his petition that he relied on to support his claim. *See Baker*, 582 S.W.3d at 409 (stating that prima facie proof can consist of documents, discovery responses, and affidavits on file as well as other evidence trial court may receive "in its discretion"). He attached the trial court's temporary protective order and show cause order and the order extending the temporary protective order and show cause order, the latter of which issued after Joseph was served with process. But neither document mentions anything about service of process or DuBrock, and they do not establish that DuBrock did not sign the return of service. He also attached the default protective order, which recites the trial court's findings that Joseph was "duly and properly served with the application and notice of the hearing" but "did not appear and wholly made default." The order also states that "all necessary prerequisites of the law have been satisfied" and the court had jurisdiction over the parties and subject-matter jurisdiction over the case. The

14

trial court's findings are not, however, evidence on the issue of whether DuBrock signed the return. These documents are not directly relevant to our inquiry.

Joseph's petition also included the return of service, which is primarily in dispute in this case. The return is a preprinted form filled out in handwriting. The return shows that Joseph was served at his home address in Louisiana, and it shows the date and time that he was served. Further, it includes a copy of the citation, notice of Jack's application for a protective order and a temporary protective order, and notice of the March 7 hearing. *See* TEX. R. CIV. P. 107(b) (providing information that is required on return of service). The preprinted line for "Affiant" is blank, but above the preprinted line for "Deputy," the serving officer wrote "Lake Charles, LA. of Calcasieu Parish, LA. Mike DuBrock CPSO (15 miles)." The face of the return shows that DuBrock handwrote, though printed, his name on the return, which is sufficient to constitute his signature. *See Griffith*, 902 S.W.2d at 206 (stating that "officer's return is prima facie evidence of the facts recited therein and cannot be rebutted by the uncorroborated proof of the moving party") (citing *Primate Constr.*, 884 S.W.2d at 152–53); *Garza*, 1994 WL 149079, at *1 (citing *Houston Pipe Coating*, 679 S.W.2d at 45).

Joseph also argues that the line above the preprinted "Affiant" is blank, and therefore DuBrock did not sign the return. Not so. The document was notarized with a notary's certificate stating that the officer "known to me [the notary] to be the

15

person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this CITATION/NOTICE was executed by him/her in the exact manner recited on the return." *See Griffith*, 902 S.W.2d at 206. And although there is a blank line in the notary's certificate, the face of the return unambiguously shows that DuBrock was the "person whose signature appears on the foregoing return." Thus, the notary certified that DuBrock's signature appeared on the return, that he was duly sworn, that he stated that he executed the citation and notice, and that he executed it in the exact manner that he recited in his handwriting on the form.

In his brief, Joseph concludes this argument by stating that "the question now is whether Deputy DuBrock intended for his simple, written name to constitute a symbolic affirmation, to which the answer is negative." Joseph's only arguments regarding a lack of intent is that: (1) the blank line above the preprinted "Affiant" is "telling evidence that no signature was ever intended"; and (2) DuBrock wrote next to his name "CPSO (15 miles)" and therefore he could not have intended to sign on that line "because he presumably did not intend for 'CPSO (15 miles)' to form part of his signature." However, Joseph did not offer any evidence showing DuBrock did not intend his printed name to constitute a signature. Nor did he argue that he had or could obtain additional evidence to present to the trial court. *See Baker*, 582 S.W.2d at 409 (stating that petitioner bears burden of persuasion). Speculation is not prima

16

facie evidence. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 758 (Tex. 2003) (stating that bill-of-review petitioner's evidence, "though surprisingly detailed," cannot turn speculation into proof of fraud).

Other than the documents discussed above, including the return, Joseph did not offer any other evidence. At the end of the hearing on Joseph's bill of review and summary judgment motion, the trial court ordered Joseph to provide additional briefing showing his need for an evidentiary hearing, advising Joseph that "if [his] brief convinces [the court] that [he] need[ed] a hearing on this matter, then [the court] will set it for a hearing." The court stated it would review the case law and "see exactly what [Joseph's] argument is as to why this doesn't qualify as a signature." Joseph provided no additional evidence and he did not argue that any could be obtained through discovery to support his position. Nor did he make any further request for a hearing. Instead, he relied solely on legal arguments.

The return of service, alone or together with Joseph's other evidence, is not prima facie proof that he was improperly served and would be entitled to judgment on retrial if no evidence to the contrary was offered. *See Baker*, 582 S.W.2d at 408; *Caldwell*, 154 S.W.3d at 96–97. Because Joseph did not make a prima facie case of improper service and because there were no factual disputes, the sole issue was a question of law for the trial court to decide, and thus Joseph was not entitled to a trial. *See Baker*, 582 S.W.2d at 408; *Caldwell*, 154 S.W.3d at 97; *see also Soefje*,

17

270 S.W.3d at 625; *Walden*, 97 S.W.3d at 323. We conclude that the return strictly complied with Rule 107 because it was signed by the serving officer.

## 2. Failure of Executing Officer to Sign in Official Capacity

In the second part of his first issue, Joseph argues that DuBrock did not sign the return in his official capacity and therefore the return is "fatally defective." Jack responds that Rule 107 previously required a sheriff's deputy who serves process to sign the return in his official capacity, but the rule was amended in 2012 and no longer includes that requirement.

Rule 107 was amended effective January 1, 2012. *LEJ Dev. Corp. v. Sw. Bank*, 407 S.W.3d 863, 869 (Tex. App.—Fort Worth 2013, no pet.); *In re S.C.*, No. 02-15-00191-CV, 2015 WL 9435937, at *3 (Tex. App.—Fort Worth Dec. 23, 2015, no pet.). Prior to that date, the rule required the return of service to "be signed by the officer [executing the citation] officially . . . ." *LEJ Dev.*, 407 S.W.3d at 869 (quoting version of Rule 107 in effect prior to 2012 amendment). The amendment effective in and after 2012 does not require that the return "be signed by the officer officially"; instead, the rule only requires the serving officer to "sign the return." TEX. R. CIV. P. 107(e). Because it is undisputed that Jack filed her application in 2018, which is after the 2012 amendment, we conclude that the current version of Rule 107 applies.

On appeal, Joseph relies solely on *Travieso v. Travieso*, a 1983 opinion from our sister court construing Rule 107. *See* 649 S.W.2d at 819–20. In *Travieso*, the

18

court relied solely on the language of Rule 107 in effect at the time in stating that "th[e] rule establishes three requirements for the proper return of a citation by personal service," including that the return "be signed by the officer officially." *Id.* at 820 (quoting prior version of Rule 107). As explained above, however, Rule 107 has been amended since *Travieso* issued in 1983, and the requirement that the officer sign the return "officially" is not included in the current version of the rule. *See* TEX. R. CIV. P. 107(e). Thus, *Travieso* does not support Joseph's argument that DuBrock was required to sign the return in his official capacity. We therefore conclude that DuBrock was not required to sign his name in his official capacity. *See id.* We hold that the trial court did not abuse its discretion in denying Joseph's bill of review. *See Moore*, 408 S.W.3d at 432; *Xiaodong Li*, 404 S.W.3d at 62.

We overrule Joseph's first issue.

## Due Process

In his second issue, Joseph argues that he was denied due process in the underlying proceeding because the trial court denied his request for an evidentiary hearing and trial on his bill of review.[3] Joseph contends that the trial court improperly

---

[3] Joseph does not argue on appeal that he was denied due process in the protective order proceeding, either because of an invalid signature on the return of service or otherwise. *See* TEX. R. APP. P. 38.1(i) (requiring appellate briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Guimaraes v. Brann*, 562 S.W.3d 521, 538 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("Failure to cite appropriate legal authority or to provide substantive analysis of the legal issues presented results in

19

entered judgment denying his bill of review because Jack did not file a cross-motion for summary judgment and no additional evidence was presented at the hearing on his summary judgment motion. Joseph contends that he had a due process right to a trial on his bill of review or at least an evidentiary hearing to present evidence. Jack responds that the trial court conducted a hearing and that Joseph did not meet his burden to establish a prima facie showing of improper service.

## A.     Standard of Review and Governing Law

We review de novo a claim that a party was deprived of a constitutional right because it presents an issue of law. *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 446 (Tex. App.—Austin 2011, pet. denied) (citing *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 771 (Tex. App.—Austin 2005, no pet.)). The United States and Texas Constitutions prohibit the deprivation of life, liberty, and property from any person without due process of law. U.S. CONST. amend. XIV, § 1; TEX. CONST. art. 1, § 19. The right to be heard is a fundamental concept of due process, and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). Generally, the right to be heard includes the rights to a full and fair hearing before a court with

---

waiver of a complaint on appeal.") (citation omitted); *see also PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 274 (Tex. 2012) ("Texas courts of appeals have correctly distinguished between technical defects in service and a complete failure or lack of service, concluding that only the latter violates due process.") (citations omitted).

20

jurisdiction, to introduce evidence and examine witnesses, and to have judgment rendered only after a trial on the merits. *Soefje*, 270 S.W.3d at 625.

However, due process does not always prohibit disposition of a case before trial. *Id.* Summary judgment is one example of a trial court disposing of a case before trial. *See* TEX. R. CIV. P. 166a (providing, on party's motion, "judgment sought shall be rendered forthwith" if pleadings and other evidence on file show "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response"). In addition, "a judgment may be rendered by way of a pre-trial hearing in limited circumstances where the record unmistakably demonstrates that there were only legal issues to decide and the parties had notice that the court would consider final disposition during the pre-trial hearings." *Soefje*, 270 S.W.3d at 625 (citations omitted); *see* TEX. R. CIV. P. 166 (authorizing trial court, in its discretion and to assist in disposition of case, to hold pretrial conference to consider "[c]ontested issues of fact" and "[t]he identification of legal matters to be ruled on or decided by the court"); *Walden*, 97 S.W.3d at 323 (holding that Rule 166 does not prevent trial court from receiving evidence and expert testimony to "determin[e] whether any fact issue remained for submission to a jury" and "for the limited purpose of identifying and ruling on legal issues, provided the court's rulings do not resolve factual disputes that properly fall within the province of the jury.").

21

**B. Analysis**

As stated above, the Texas Supreme Court has outlined the procedure and the parties' respective burdens of persuasion as "slightly" modified when a plaintiff seeks a bill of review based solely on a claim of improper service. *Caldwell*, 154 S.W.3d at 97–98; *Baker*, 582 S.W.2d at 408–09. For largely the same reasons discussed above, we conclude that the trial court did not violate Joseph's due process right to be heard. The only evidence bearing on whether DuBrock signed the return of service is the return itself, which Joseph attached to his petition and summary judgment motion. Jack did not present any controverting evidence, and the parties solely disputed whether DuBrock's handwritten, printed named constituted a signature under Rule 107. Thus, there were no material facts in dispute, and the sole issue was a question of law for the trial court to resolve, not the factfinder at a trial. *See Soefje*, 270 S.W.3d at 625 (stating that judgment may be rendered in pretrial hearing where record unmistakably demonstrates only legal issues remain for decision).

Moreover, at the hearing on Joseph's motion, the trial court told Joseph that it had reviewed both his bill of review and his motion for summary judgment and that it disagreed with him that DuBrock's signature was invalid. At the end of the hearing, the trial court ordered Joseph to brief the signature issue so the court could

decide whether he was entitled to a hearing, affording Joseph an additional opportunity to establish a prima facie case.

Joseph filed a supplemental brief, but he did not provide any additional evidence, any argument that additional discovery would provide the evidence he needed to prove his prima facie case, or any further request for an evidentiary hearing. Indeed, nearly the entire record is one-sided in favor of Joseph's arguments and evidence. Other than Jack's answer with a general denial and request for costs and attorney's fees, the clerk's record consists of: (1) Joseph's petition with the facts, legal authority, and evidence, including the return, that he relied on for his contentions; (2) his motion for summary judgment with supporting evidence; and (3) his supplemental brief *without* any additional evidence. The reporter's record consists of both parties' arguments, and it shows that while the trial court was initially inclined to grant Joseph's bill of review, it reversed course during the short hearing after considering the pleadings, the parties' arguments, the evidence, including DuBrock's signature on the return, and the text of Rule 107. Even on appeal, Joseph does not argue what additional evidence, if any, would show that DuBrock's signature was not a valid signature.

Thus, Joseph was given sufficient opportunity to present evidence of a prima facie case that would have entitled him to an evidentiary hearing or trial, but the dispute was solely whether DuBrock's signature on the return was sufficient under

Rule 107. As stated above, this is a legal issue for the court to decide. *See Baker*, 582 S.W.2d at 408; *Soefje*, 270 S.W.3d at 625. We therefore conclude that Joseph did not satisfy his burden to present prima facie proof entitling him to a "'full-blown' examination of the merits" of his bill of review. *See Baker*, 582 S.W.2d at 408.

On appeal, Joseph relies solely on our sister court's opinion in *Striedel v. Striedel*, arguing that this case is analogous because he and the appellant in *Striedel* were similarly denied the right to be heard and present evidence. *See* 15 S.W.3d 163 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.). However, *Striedel* is distinguishable. That case was a direct appeal from a protective order, not an appeal from a denied bill of review, and the appellant in *Striedel* argued that he was denied an opportunity to be heard at the hearing on the protective order against him. *Id.* at 164–65. Here, Joseph argues that his due process rights were violated in the underlying bill-of-review proceeding, not in the prior protective order proceeding. Furthermore, the appellant in *Striedel*, against whom the protective order was sought by the appellee in that case, appeared pro se while the appellee was represented by counsel, and the trial court denied the appellant's request for an attorney. *Id.* at 165. At the hearing on the protective order, the appellant attempted to cross-examine the appellee but, before he could finish his examination—which consisted of "only two and one-half pages of the record in [the] short hearing"—the trial court cut him off

and granted the protective order over his objection that he had other evidence and had not been allowed to testify. *Id.* at 166.

In the underlying proceeding here, by contrast, Joseph was represented by counsel, who attached evidence to Joseph's petition, filed a motion for summary judgment with supporting evidence on Joseph's behalf, and filed a supplemental brief in support of Joseph's petition and claims of invalid service. Joseph's counsel was not interrupted at the hearing by either the trial court or opposing counsel, and he was ordered by the trial court to file a supplemental brief so the court could determine whether an additional hearing was necessary. Joseph did not provide any additional evidence or request an evidentiary hearing. Thus, unlike the appellant in *Striedel*, Joseph was not prevented by the trial court from testifying or offering additional evidence. *See id.*

Finally, we disagree with Joseph that the trial court erred by entering judgment on his bill of review when Jack did not file a cross-motion for summary judgment. While summary judgment may only be rendered on a party's motion and Jack did not file a motion for summary judgment, the trial court did not grant summary judgment in favor of Jack; it entered judgment denying Joseph's bill of review and *his* motion for summary judgment. *See* TEX. R. CIV. P. 166a (providing for summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the

25

motion or in an answer or any other response"). We hold that the trial court did not violate Joseph's due process right to be heard, including his right to present evidence and to a trial on the merits of his case.

We overrule Joseph's second issue.

## Conclusion

We affirm the judgment of the trial court. We dismiss any pending motions as moot.


April L. Farris
Justice

Panel consists of Justices Hightower, Countiss, and Farris.